**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** <br><br> **Plaintiff,** <br><br> -against- <br><br> **PEDIATRIC HEALTH CARE ALLIANCE, P.A.** <br><br> **Defendant.** | Civil Action No. _____ <br><br> **COMPLAINT** <br> **AND DEMAND FOR JURY TRIAL** <br><br> **INJUNCTIVE RELIEF SOUGHT** |

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful retaliatory employment practices and to provide appropriate relief to Charging Party Chelsea Jackson[1] ("Jackson"), who was adversely affected by such practices. As alleged with greater specificity below, Defendant Pediatric Health Care Alliance, P.A. ("PHCA") retaliated against Ms. Jackson for reporting sexual harassment, by transferring her to an inconvenient location, limiting her earning potential, and reducing her job duties, leaving her with no other choice than to resign.

**JURISDICTION AND VENUE**

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of Civil Rights

---

[1] Ms. Jackson filed her U.S. Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination as Chelsea Krueger. She has since changed her surname from Krueger to Jackson.

Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Middle District of Florida, Tampa Division.

## PARTIES

3. EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. PHCA is a pediatric medical practice with 14 locations in the Tampa, Florida area.

5. At all relevant times, PHCA has continuously done business in Florida, and has continuously had at least 15 employees.

6. At all relevant times, PHCA has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

7. More than 30 days prior to the institution of this lawsuit, Ms. Jackson filed a Charge of Discrimination with EEOC alleging that PHCA violated Title VII.

8. EEOC issued a Letter of Determination on February 3, 2020, finding reasonable cause to believe that retaliation occurred in violation of Title VII.

9. Prior to initiating this lawsuit, EEOC attempted to correct the unlawful

employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF FACTS**

11. PHCA is a pediatric medical practice with approximately 50 physicians across 14 locations in the Tampa, Florida area.

12. Ms. Jackson is a female nurse with over 10 years of experience.

13. Ms. Jackson was employed by PHCA from on or about May 11, 2009 until PHCA constructively terminated her employment on or about May 8, 2018.

14. Ms. Jackson commenced her PHCA employment as a Licensed Nurse Practitioner at PHCA's FishHawk office located in Lithia, Florida ("FishHawk"), where she worked for almost her entire tenure with the company.

15. Throughout Ms. Jackson's PHCA employment, she was qualified for her position and performed her duties in a professional and competent manner.

16. From approximately May 2013 through September 2014, Ms. Jackson worked for PHCA on a part-time basis while she attended nursing school to become a Registered Nurse ("RN").

17. Thereafter, Ms. Jackson returned to full-time employment with PHCA as a RN at FishHawk.

**I.    Dr. Tappan Subjected Ms. Jackson to Sexual Harassment**

18. From late 2017 to early 2018, Ms. Jackson was subjected to sexual harassment

by Christopher Tappan, M.D. ("Tappan").

19. Dr. Tappan is Vice President of PHCA's Board of Directors and a physician in PHCA's FishHawk office.

20. In or around late 2017 to early 2018, while Ms. Jackson was sitting at a desk and working on her computer in a FishHawk lab area, Dr. Tappan approached Ms. Jackson from behind and forcefully pressed his groin against her back for several seconds.

21. Ms. Jackson tried to move out of Dr. Tappan's way, but Dr. Tappan, who is over 6-feet tall and more than 200 lbs., pinned Ms. Jackson against the desk so that she could not move.

22. Approximately two months later, on or about February 28, 2018, Ms. Jackson was walking toward a FishHawk patient examination room and encountered Dr. Tappan.

23. Ms. Jackson stopped walking to allow Dr. Tappan to pass her.

24. Rather than just walk by her, Dr. Tappan grabbed Ms. Jackson by her hip and firmly squeezed.

25. Ms. Jackson did not consent to being touched by Dr. Tappan, and such touching was unwanted.

## II.   Ms. Jackson Reports Dr. Tappan's Conduct to Her Supervisor

26. PHCA maintains a "harassment-free policy" requiring employees to report "unwelcome conduct" and sexual harassment, which it states includes "physical contact, such as patting, pinching or brushing against another's body."

27. Consistent with PHCA's "harassment-free policy," on or about March 8, 2018,

Ms. Jackson reported Dr. Tappan's sexual harassment to her direct supervisor, Gladys Rivers ("Rivers"), FishHawk's Office Manager.

28. During this meeting, Ms. Rivers confirmed to Ms. Jackson that Dr. Tappan's conduct was highly inappropriate.

29. Ms. Rivers instructed Ms. Jackson to contact PHCA's human resources personnel to report Dr. Tappan's conduct.

30. Following Ms. Jackson's complaint, Ms. Rivers arranged for Dr. Tappan and Ms. Jackson to work on opposite sides of the office to limit their interaction.

### III.   Ms. Jackson Reports Dr. Tappan's Conduct to Human Resources

31. On or about March 13, 2018, Ms. Jackson emailed Kim Uttech ("Uttech"), PHCA's Director of Human Resources, with a detailed report of Dr. Tappan's sexual harassment.

32. Thereafter, on or about March 14, 2018, Ms. Uttech and Cathy Kwaitkowski ("Kwiatkowski"), PHCA's Human Resources Coordinator, interviewed Ms. Jackson about Dr. Tappan's sexual harassment.

33. At that time, Ms. Jackson advised Ms. Uttech and Ms. Kwaitkowski that she was concerned that Dr. Tappan's inappropriate conduct could escalate and that it made her anxious and uncomfortable to work on Dr. Tappan's side of the office.

34. When asked of her desired outcome, Ms. Jackson explained that she wanted Dr. Tappan to be made aware of her concerns, for the harassment to cease, and for Dr. Tappan and her to move forward with a civil work relationship.

35. On or about March 20, 2018, Ms. Uttech and Maireni Gomez ("Gomez"), a senior member of PHCA's human resources department, advised Ms. Jackson that PHCA concluded its investigation into Ms. Jackson's sexual harassment complaint, and that it was unable to substantiate Ms. Jackson's allegations.

### IV. PHCA Transfers Ms. Jackson from FishHawk to Big Bend in Retaliation for Reporting Sexual Harassment

36. After providing Ms. Jackson with the results of PHCA's investigation, Ms. Uttech and Ms. Gomez advised Ms. Jackson of PHCA's unilateral decision to transfer her to PHCA's Big Bend office located in Riverview, Florida ("Big Bend"), effective the next day.

37. PHCA transferred Ms. Jackson from FishHawk to Big Bend in retaliation for Ms. Jackson having reported Dr. Tappan's sexual harassment.

38. Ms. Jackson immediately advised PHCA that she did not want to transfer, and that a transfer was unnecessary since Ms. Rivers had already adjusted Ms. Jackson's schedule to limit her interaction with Dr. Tappan.

39. Ms. Uttech, however, made clear that Ms. Jackson did not have a choice. Ms. Uttech further explained that there is nothing that they can do about Dr. Tappan, and that Ms. Jackson should transfer so that she could be more comfortable in her work environment.

### V. Ms. Jackson's Transfer to Big Bend Caused Her Personal Hardship

40. PHCA's decision to transfer Ms. Jackson from FishHawk to Big Bend caused her significant hardship.

41. Ms. Jackson explained to PHCA that her child's school was located near FishHawk and that the transfer would cause a significant hardship, but to no avail.

42. Specifically, Ms. Jackson advised PHCA that, with respect to her transfer, "[i]t will be a burden to me to drive out of my way, lose time with my children, spend additional money and time on my commute, and have to make additional arrangements at the last minute."

43. PHCA refused to reconsider its decision to transfer Ms. Jackson from FishHawk to Big Bend.

### VI. PHCA Stripped Ms. Jackson of Her Nursing Duties in Retaliation for Reporting Sexual Harassment

44. PHCA advised Ms. Jackson that a new position had been created for her at Big Bend.

45. In this new role at Big Bend, rather than perform nursing duties for which she was trained and engage in direct patient care, PHCA relegated Ms. Jackson to sitting at the front desk, answer phones, and schedule patient appointments.

46. When Dr. Tappan became aware that Ms. Jackson was providing certain administrative assistance for his patients' medical files, Ms. Jackson was instructed to stop and not perform any work on Dr. Tappan's patients' files.

### VII. PHCA Reduced Ms. Jackson's Earning Capacity in Retaliation for Reporting Sexual Harassment

47. By transferring Ms. Jackson to Big Bend, PHCA reduced Ms. Jackson's earning capacity.

48. PHCA paid Ms. Jackson on an hourly basis.

49. At FishHawk, Ms. Jackson typically worked 40 to 42 hours per week and received overtime pay.

50. At Big Bend, however, Ms. Jackson was typically only allowed to work 36 to 40 hours per week and overtime was not permitted.

### VIII. PHCA Constructively Terminated Ms. Jackson's Employment in Retaliation for Reporting Sexual Harassment

51. On or about May 8, 2018, as a result of the adverse consequences of Ms. Jackson's transfer, including ongoing hardship, stripping of job duties, and reduced pay, as described above, Ms. Jackson's work conditions were so intolerable that she was constructively terminated from her PHCA employment.

### STATEMENT OF CLAIM FOR RELIEF

52. Paragraphs 11 through 51 are fully incorporated herein.

53. PHCA engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Ms. Jackson for opposing sexual harassment. Ms. Jackson's reports and complaints of sexual harassment, as alleged in Paragraphs 27 through 34, constitute protected activity under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). PHCA retaliated against Ms. Jackson as alleged in Paragraphs 36 through 51, by transferring her which caused her hardship, stripped her of job duties, reduced her pay, and made her working conditions so intolerable that she was forced to resign.

54. The effect of the practices complained of in Paragraphs 11 through 51, above, has been to affect the terms and conditions of employment for Ms. Jackson, to deprive Ms. Jackson of equal employment opportunities, and to otherwise adversely affect her status as an employee in an effort to retaliate against her for engaging in protected activity.

55. The unlawful employment practices complained of in Paragraphs 11 through 51, above, were done intentionally and with malice and/or with reckless indifference to Ms. Jackson's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining PHCA, its officers, directors, agents, managers, supervisors, employees, and all persons in active concert or participation with them, from retaliating against employees who engage in statutorily protected activity in the workplace;

B. Order PHCA to institute and implement policies, practices, and programs which provide equal employment opportunities for women;

C. Order PHCA to make Ms. Jackson whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement of Ms. Jackson or front pay in lieu thereof;

D. Order PHCA to make Ms. Jackson whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E. Order PHCA to pay Ms. Jackson punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

  F. Grant such further relief as the Court deems necessary and proper in the public interest; and

  G. Award EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Dated: June 22, 2020

            U.S. EQUAL EMPLOYMENT
            OPPORTUNITY COMMISSION

            SHARON FAST GUSTAFSON
            General Counsel

            GWENDOLYN YOUNG REAMS
            Associate General Counsel

            131 M Street, N.E.
            Washington, DC 20507

            ROBERT E. WEISBERG
            Regional Attorney
            Florida Bar No. 285676

            BEATRIZ BISCARDI ANDRE
            Supervisory Trial Attorney
            New York Bar No. 4394599

/s/ Robert L. Adler
ROBERT L. ADLER
Trial Counsel
Florida Bar No. 1004597

Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Phone: (786) 648-5843
Fax: (305) 808-1835
Robert.Adler@eeoc.gov

*Attorneys for Plaintiff*